1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

KENNY CORCORAN,

11

Plaintiff,

v.

12

TIM GERVAIS, et al.,

13

Defendants.

14

CASE NO. C21-0001JLR

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT

15

## I.    INTRODUCTION

16

Before the court is *in personam* Defendant Tim Gervais's motion for summary

17

judgment.  (Mot. (Dkt. # 28); Reply (Dkt. # 31).)  Plaintiff Kenny Corcoran opposes the

18

motion in part.  (Resp. (Dkt. # 30).)  Although Mr. Corcoran concedes that he has

19

received all payments he is due for wages, maintenance, and cure, he asserts that his

20

negligence and unseaworthiness claims must proceed to trial.  (*Id.* at 1.)  The court has

21

considered the motion, all materials submitted in support of and in opposition to the

22

1    motion, and the governing law.  Being fully advised,[1] the court GRANTS Mr. Gervais's

2    motion for summary judgment in its entirety and DISMISSES this action with prejudice.

3    **II.    BACKGROUND**

4    Because Mr. Corcoran concedes that Mr. Gervais has "made all required payments

5    of wages, maintenance[,] and cure" (Resp. at 1), the court sets forth below only the

6    factual background relevant to Mr. Corcoran's negligence and unseaworthiness claims.

7    **A.    Factual Background**

8    Mr. Gervais is the owner of the purse seine fishing vessel F/V WOLVERINE ("the

9    Vessel").  (*See* Ans. (Dkt. # 10) ¶ 4.)  Mr. Corcoran joined the crew of the Vessel in

10    Chignik, Alaska, on July 27, 2019, and worked on the Vessel until August 30, 2019.

11    (Corcoran Dep.[2] at 26:11-15, 56:22-57:1.)  He brought with him commercial fishing gear,

12    a pair of XtraTuf boots, and 14 or 15 pairs of socks.  (*Id.* at 31:2-32:18.)  The Vessel had

13    a working diesel stove where crew members, including Mr. Corcoran, would dry their

14    boots and socks.  (*Id.* at 38:8-24.)  Mr. Corcoran testified that he never ran out of dry

15    socks when he was on the Vessel, that he was never prevented from changing his socks,

16    and that no one forced him to wear wet boots.  (*Id.* at 41:13-42:7, 48:2-4.)

17

18

19

20    [1] No party requests oral argument on the motion (*see* Mot. at 1; Resp. at 1) and the court concludes that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

21

22    [2] Both parties have submitted excerpts of the transcript of Mr. Corcoran's deposition. (Beard Decl. (Dkt. # 29) ¶ 2, Ex. A; Merriam Decl. (Dkt. # 30-2) ¶ 2, Ex. 1.)  For ease of reference, the court cites directly to the page and line number of Mr. Corcoran's deposition.

1    In about mid-August, however, Mr. Corcoran's feet began to hurt while he was

2  working aboard the Vessel.  (*Id.* at 42:8-20.)  He testified that the crew would catch sets

3  of jellyfish that were so large that "jellyfish and water and slime . . . would get all in the

4  boots every single day, every single set."  (*Id.*)  As a result, even if he changed his socks

5  in between sets, his boots would be filled with jellyfish tentacles and his socks would

6  again get wet when the crew caught the next set.  (*Id.*)  About seven or eight days before

7  he left the Vessel, Mr. Corcoran told Mr. Gervais that his feet were "starting to get real

8  bad."  (*Id.* at 47:11-15, 48:5-8.)  Mr. Gervais suggested using the boot dryer, but

9  according to Mr. Corcoran, his boots were "never too wet" and the real problem was that

10  jellyfish were getting into his boots.  (*Id.* at 47:19-48:1, 48:9-16.)  Mr. Corcoran told a

11  fellow crewman that he "didn't know how much longer [he] could take" working with

12  sore feet.  (*Id.* at 51:6-23.)

13    On August 30, 2019, the Vessel was delivering her catch to a tender vessel.  (*Id.* at

14  53:4-13.)  After hearing that 20-foot waves were predicted for the next day, Mr. Corcoran

15  decided that he would not be okay to continue fishing because his feet hurt so badly.  (*Id.*

16  at 54:8-21.)  Mr. Corcoran told Mr. Gervais that he could not fish another day and that his

17  feet were so swollen that he couldn't take off his boots.  (*Id.* at 55:11-25.)  He caught a

18  ride on the tender vessel and returned to Chignik.  (*Id.* at 56:22-57:1.)

19    On August 31, 2019, Mr. Corcoran saw Community Health Aide Trainee Rosanna

20  McArthur at the Bristol Bay Area Health Corporation clinic in Chignik Bay.  (Beard

21  Decl. ¶ 4, Ex. C ("Patient Encounter Form").)  Ms. McArthur noted that Mr. Corcoran

22  presented with "painful, swollen, red feet" and that the problem had started two weeks

prior.  (*Id.* at 1.)  She also wrote that Mr. Corcoran told her that he had "been wearing boots a lot, and in wet boots for a long time; not being able to dry them out or keep them dry" and that "[j]ellyfish could have got through socks and effected [sic] skin."  (*Id.* at 2.) She assessed that Mr. Corcoran was suffering from a "fungus skin infection (Athlete's Foot)" and a "severe infection under the skin (Trench Foot)."  (*Id.* at 1.)  Ms. McArthur communicated with a doctor who was off-site, and prescribed Mr. Corcoran an antibiotic and an anti-fungal cream to treat his feet, along with Tylenol as needed for pain.  (*Id.*; Corcoran Dep. at 60:1-18.)  He did not receive a bill for the clinic visit, nor did anyone recommend any future treatment for his feet.  (Corcoran Dep. at 74:22-75:9.)

Mr. Corcoran testified that he believed that his foot problems were caused because Mr. Gervais's boat setup "has it[3] really high" so that it could hold more fish, which in turn meant that it would "hold more jellyfish which gets above the knees," causing jellyfish to get into his boots.  (*Id.* at 72:15-73:7; *see also id.* at 73:25-74:4 (stating that there was nothing else wrong with the boat that caused the issues with his feet).)  He also testified, however, that the boat needed to be that way so that it could hold more salmon. (*Id.* at 72:25-73:12.)  He also stated that Mr. Gervais didn't do anything wrong to cause the issues with his feet.  (*Id.* at 73:13-24.)

**B.    Procedural Background**

Mr. Corcoran filed his complaint in this matter on January 2, 2021, against Mr. Gervais *in personam* and the Vessel *in rem*.  (Compl. (Dkt. # 1) at 1.)  He alleged claims

---

[3] It is not clear from Mr. Corcoran's testimony what specific portion of the Vessel was "really high."  (*See id.* at 72:15-73:7.)

1    for negligence, unseaworthiness, and unpaid wages under the Jones Act and general

2    maritime law.  (*See generally id.*)

3      On July 15, 2021, the court entered a scheduling order in which it set the deadline

4    to amend pleadings on October 19, 2022, and the trial date on April 17, 2023.  (Sched.

5    Ord. (Dkt. # 13).)  Mr. Gervais filed the instant motion for summary judgment on

6    December 15, 2022.  (Mot.)  The motion is now ripe for decision.

7           **III.    ANALYSIS**

8      Because Mr. Corcoran concedes that Mr. Gervais has paid him all of the wages,

9    maintenance, and cure to which he alleges he was entitled (Resp. at 1), the court

10   GRANTS Mr. Gervais's motion for summary judgment on Mr. Corcoran's claims for

11   unpaid wages and for maintenance and cure (*see* Mot. at 14-18).  With respect to his

12   negligence and seaworthiness claims, Mr. Corcoran alleged that he "was forced to wear

13   boots which were continually wet inside" and suffered injuries to his feet as a result.

14   (Compl. ¶ 6.)  He further alleged that these injuries were

15      caused by the unseaworthiness of the vessel; the negligence of the
        defendants . . .  and the failure of the defendants to provide a reasonably safe
16      place to work in one or more of the following respects:  Not providing
        reasonable accommodations with which to dry the inside of footwear or
17      providing alternative footwear that was dry inside.

18   (*Id*. ¶ 7.)  In his response, however, he asserts that his injuries resulted from jellyfish

19   getting into his boots while he worked.  (*See generally* Resp.)  Below, the court sets forth

20   the summary judgment standard and then considers Mr. Gervais's motion for summary

21   judgment on Mr. Corcoran's negligence and unseaworthiness claims.

22

ORDER - 5

1  **A.    Summary Judgment Standard**

2        Under Rule 56 of the Federal Rules of Civil Procedure, either "party may move

3  for summary judgment, identifying each claim or defense—or the part of each claim or

4  defense—on which summary judgment is sought." Fed. R. Civ. P. 56.  Summary

5  judgment is appropriate if the evidence, when viewed in the light most favorable to the

6  non-moving party, demonstrates "that there is no genuine dispute as to any material fact

7  and the movant is entitled to judgment as a matter of law." *Id.*; *see Celotex Corp. v.*

8  *Catrett*, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if "the evidence is such that a

9  reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

10  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the

11  outcome of the suit under the governing law." *Id.*

12        The moving party bears the initial burden of showing that there is no genuine

13  dispute of material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477

14  U.S. at 323.  If the moving party does not bear the ultimate burden of persuasion at trial,

15  it nevertheless "has both the initial burden of production and the ultimate burden of

16  persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz*

17  *Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its burden of

18  production, the moving party must either produce evidence negating an essential element

19  of the nonmoving party's claim or defense or show that the nonmoving party does not

20  have enough evidence of an essential element to carry its ultimate burden of persuasion at

21  trial." *Id.*  If the moving party meets its burden of production, the burden then shifts to

22  the nonmoving party to identify specific facts from which a factfinder could reasonably

1    find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at

2    250.

3        The court is "required to view the facts and draw reasonable inferences in the light

4    most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

5    The court may not weigh evidence or make credibility determinations in analyzing a

6    motion for summary judgment because these are "jury functions, not those of a judge."

7    *Anderson*, 477 U.S. at 249-50. Nevertheless, the nonmoving party "must do more than

8    simply show that there is some metaphysical doubt as to the material facts . . . . Where

9    the record taken as a whole could not lead a rational trier of fact to find for the

10    nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal

11    quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

12    475 U.S. 574, 586-87 (1986)).

13 **B.**    **Negligence**

14        The Jones Act permits a "seaman injured in the course of employment" to recover

15    damages against his or her employer. 46 U.S.C. § 30104. To establish a claim for

16    negligence under the Jones Act, the plaintiff must establish (1) the employer's duty to

17    provide a safe work environment to its seaman employee; (2) breach of that duty; (3) the

18    employer's awareness of the unsafe condition; and (4) a causal link, however slight,

19    between the employer's breach and the seaman's injury. *Ribitzki v. Canmar Reading &*

20    *Bates, Ltd. P'ship*, 111 F.3d 658, 662-64 (9th Cir. 1997); *Ili v. Am. Seafoods Co., LLC*,

21    357 F. App'x 807, 808-09 (9th Cir. 2009) (citing *Ribitzski*, 111 F.3d at 662-64)). "[T]he

22

1    employer must have notice and the opportunity to correct an unsafe condition before

2    liability will attach." *Havens v. F/T Polar Mist*, 996 F.2d 215, 218 (9th Cir. 1993).

3          Mr. Gervais first argues that Mr. Corcoran's own testimony shows that, contrary

4    to the allegations in his complaint, he was never "forced to wear boots which were

5    continually wet inside" and that Mr. Gervais did provide "reasonable accommodation

6    with which to dry the inside of [his] footwear." (Mot. at 11-12 (quoting Compl. ¶¶ 6-7).)

7    The court agrees. Mr. Corcoran testified that the Vessel had a working diesel stove that

8    was constantly on and that he used to dry his boots; that he never ran out of dry socks;

9    that he was given opportunities to change his socks during the day; that no one ever

10   stopped him from changing his socks; and that his "boots were never too wet."

11   (Corcoran Dep. at 38:8-24, 41:13-42:7, 47:19-23.) Indeed, Mr. Corcoran acknowledges

12   in his response that his attorney did "not fully understand[] the nature of Mr. Corcoran's

13   complaints until his deposition" and that "jellyfish in his boots was the problem, not [his]

14   boots themselves." (Resp. at 2 (citing Corcoran Dep. at 47-49).) Therefore, the court

15   GRANTS Mr. Gervais's motion for summary judgment on Mr. Corcoran's claim that his

16   injuries were caused by Mr. Gervais's negligence in forcing Mr. Corcoran to wear wet

17   boots and failing to provide "reasonable accommodation" for drying his boots.

18         Mr. Corcoran now argues that his negligence claim is based on the jellyfish getting

19   into his boots, rather than being forced to wear wet boots. (Resp. at 2.) He contends that

20   the presence of the jellyfish is evidence that Mr. Gervais failed to provide Mr. Corcoran a

21   "reasonably safe place to work." (*Id.*) But Mr. Corcoran also states that Mr. Gervais did

22   nothing wrong to cause the issues with his feet, and he provides no further detail about

how Mr. Gervais breached any duty he owed to Mr. Corcoran relating to the jellyfish. (Corcoran Dep. at 73:13-24; *see generally* Resp.)  Because Mr. Gervais has not met his burden to present evidence that Mr. Gervais breached any duty to him with respect to the presence of jellyfish and his injuries, the court GRANTS Mr. Gervais's motion for summary judgment on Mr. Corcoran's claim that his injuries were caused by Mr. Gervais's negligence relating to the presence of jellyfish on the Vessel.

**C.    Unseaworthiness**

The admiralty doctrine of unseaworthiness is a form of strict liability that requires the owner of a vessel to ensure that the vessel and its appurtenant equipment and appliances are "reasonably fit for her intended service."  *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971).  To establish a claim for unseaworthiness, a plaintiff must establish:  (1) seaman status triggering the warranty of seaworthiness; (2) an injury arising from the condition of the ship or its crew; (3) the equipment used was not reasonably fit for its intended use; and (4) proximate causation between the unseaworthy condition and the injury.  *Ribitzki*, 111 F.3d at 664-65; *Ili*, 357 F. App'x at 809 (citing *Ribitzski*, 111 F.3d at 664).  An unseaworthiness claim may arise from any number of circumstances including a defective physical condition, however temporary; a failure to properly maintain the ship or appurtenances thereto; an unfit or insufficient crew; or an improper method of operation.  *Usner*, 400 U.S. at 499; *Am. President Lines, Ltd. v. Welch*, 377 F.2d 501, 504 (9th Cir. 1967).  Although the duty to "furnish a vessel and appurtenances reasonably fit for their intended use" is absolute, the "standard is not

1   perfection" and the owner is not "obligated to furnish an accident-free ship." *Mitchell v.*

2   *Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960).

3         Mr. Corcoran's own testimony negates his claim that the Vessel was not

4   reasonably fit for its intended use.  With respect to his claim based on wet boots, Mr.

5   Corcoran testified that Mr. Gervais provided a means to dry boots on the Vessel and that

6   his boots were never too wet.  With respect to his claim based on jellyfish stings, Mr.

7   Corcoran testified the Vessel's set up was "really high," meaning that the jellyfish would

8   go above his knees and get into his boots.  (*Id.* at 72:15-73:7, 73:25-74:4.)  But he also

9   testified that the Vessel was set up that way so that it could hold more salmon and that

10  there was nothing else wrong with the Vessel that caused the problems with his feet; and

11  he presents no evidence that would support a finding that the Vessel was not reasonably

12  fit for its for intended use.  (*Id.* at 72:25-74:4; *see generally* Resp.); *see Ribitzki*, 111 F.3d

13  at 664-65.  Instead, he makes the bare assertion in his brief, unsupported by evidence,

14  that the deck of the Vessel was not safe.  (Resp. at 2.)  Because Mr. Corcoran has not met

15  his burden on summary judgment to present evidence from which a reasonable factfinder

16  could conclude that the Vessel was not reasonably fit for its intended use, the court

17  GRANTS Mr. Gervais's motion for summary judgment on Mr. Corcoran's

18  unseaworthiness claims.

19  **D.     Leave to Amend**

20        Mr. Corcoran asks for leave to amend his complaint.  (Resp. at 2.)  Federal Rule of

21  Civil Procedure 16(b)(4) provides that "[a] schedule may only be modified for good

22  cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Here, Mr. Corcoran has

made no effort to establish that good cause exists to extend the deadline for amending

pleadings.  To the contrary, his attorney states only that he "acknowledges not fully

understanding the nature of Mr. Corcoran's complaints until his deposition."  (Resp. at

2.)  That deposition took place on September 29, 2022—nearly three weeks before the

October 22, 2022 amended pleadings deadline.  (*See* Merriam Decl., Ex. 1 at 1; Sched.

Order.)  The discovery deadline passed on December 19, 2022, and trial is set for April

17, 2023, less than three months from now.  (*See* Sched. Order.)  In addition, the court

concludes that amendment of Mr. Corcoran's negligence and unseaworthiness claims to

include allegations relating to the presence of jellyfish would be futile for the reasons set

forth above in its analysis of Mr. Gervais's motion.  *See Allen v. City of Beverly Hills*,

911 F.2d 367, 373 (9th Cir. 1990) (including undue delay and futility among the factors

to consider when determining whether to grant leave to amend a complaint).  Because

Mr. Corcoran has not established good cause to extend the deadline for amending

pleadings, the court DENIES Mr. Corcoran's request for leave to amend his complaint.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS Mr. Gervais's motion for summary

judgment (Dkt. # 28) and DISMISSES Mr. Corcoran's claims with prejudice.

Dated this 19th day of January, 2023.

JAMES L. ROBART
United States District Judge